## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| CELLINFO, LLC<br><br>            Plaintiff,<br><br>    v.<br><br>AMERICAN TOWER CORPORATION,<br>AMERICAN TOWER LLC, AMERICAN<br>TOWER DO BRASIL – CESSAO DE<br>INFRAESTRUTURAS LTDA, and ATC IP<br>LLC.,<br><br>            Defendants. | Civil Action No. 18-11250-WGY<br><br>**REQUEST FOR HEARING** |

### PLAINTIFF CELLINFO, LLC'S MEMORANDUM IN SUPPORT OF ITS MOTION TO REOPEN CASE AND SET TRIAL DATE

Plaintiff CellInfo, LLC ("**CI**") submits this memorandum in support of its Motion to Reopen Case and Set Trial Date (the "**Motion**"). CI is entitled to have its case against American Tower Corporation, American Tower LLC, American Tower Do Brasil – Cessao de Intraestruturas LTDA, and ATC IP LLC (collectively, "**ATC**") reopened and tried on its merits in federal court because the arbitration was terminated without resolving CI's claims through no fault of CI, but rather because CI could not afford to pay excessive arbitration fees.

### I.        INTRODUCTION

Federal law requires that disputes subject to arbitration clauses be resolved in arbitral forums, if possible. However, when such a forum proves unable to resolve a dispute through no fault of the claimant, federal law does not close the door to the halls of justice. Here, after blatantly stealing CI's proprietary technology, ATC seeks to pervert the Federal Arbitration Act ("**FAA**") from a tool for expediting dispute resolution into an obstacle preventing it. The plain language of

the FAA makes clear – and every federal circuit court of appeals that has considered the issue agrees – that **a party to an arbitration clause cannot be prevented from having its claims adjudicated on the basis of its inability to pay arbitration fees**. Rather, when an arbitration fails to resolve a dispute because the claimant cannot afford arbitration fees, the claimant has a right to bring its claims in court.

After spending more than $240,000 on arbitration fees,[1] CI ran out of funds and was unable to pay a further arbitration invoice of $207,900.[2] The American Arbitration Association ("**AAA**") arbitral tribunal before which the arbitration was heard (the "**Tribunal**") offered ATC the opportunity to pay CI's portion of the remaining arbitration fees, but ATC declined to do so. The Tribunal then terminated the arbitration without prejudice to any party, offering CI the opportunity to pursue its claims "in any forum," noting that it did not need to "certify" the matter for CI to pursue relief before this Court. In terminating the arbitration, the Tribunal explicitly denied ATC's motion for a default award on the basis of CI's inability to pay further arbitration fees ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. After an arbitration is completed in accordance with the agreed-upon rules of the arbitral forum without resolving the claims at issue and through no fault of the clamant, the claimant is entitled to bring its unresolved claims in court. Here, CI did everything within its power to pursue its claims before the Tribunal in full compliance with the controlling AAA rules, but was unable to complete the arbitration due to its funds being exhausted. CI is therefore entitled to have its claims against ATC tried on their merits before this Court both under

---

[1] Of this total, CI paid $55,500 directly to AAA, $5,750 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮, and $180,000 into the IOLTA account of its then-counsel for the purpose of paying AAA arbitration fees. CI subsequently learned that this last $180,000 deposit was not passed along to AAA.

[2] The irony of this situation is that arbitration – which Congress thought would be a less expensive and more expeditious means of dispute resolution – has proven to be far more expensive than traditional litigation. See S. Rep. 536, at 3 (1924).

the plain language of the FAA, which suspends court action on claims subject to arbitration clauses only until the arbitration is over, and under the effective vindication doctrine, which requires courts to try claims that an "illusory" arbitration has failed to resolve.

For these reasons and as discussed below, the Court should reopen the case and set a date for trial pursuant to CI's proposed order, allowing CI's claims to be adjudicated on their merits.

## II.     FACTUAL BACKGROUND

CI was founded in Boston in 2014 to help wireless companies identify underserved areas—those that are high-traffic, but lack adequate cellular coverage. ███████████████████ ██████████████████████████████████████████████████████████████; see also *Deposition of Victor Drouin* 7:13-25, 8:20-25, attached as **Exhibit A** ("**Drouin Dep.**"). CI developed software for mapping cell tower coverage and identifying cell tower coverage needs. *Drouin Dep.* 8:17-25; 18:3-22. Using its software to assist in the siting of new cell towers, CI discovered that ATC, a large provider of towers with tens of thousands of towers around the world, had unlicensed equipment on many of its towers. See *Defendants' Memorandum of Law in Support of Motion to Dismiss or Stay and Compel Arbitration,* Dkt. No. 18 at p. 5-6 (describing ATC's portfolio of sites); *Drouin Dep.* 22:10-24:09 (discussing when CI realized it could help ATC and its ability to combine information into a single place for comparison). ██████████

████████████████████████████████████████████

███████████████████████████████████████

██████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████

█████████████████████████████████████████████████

██████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

███████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

█████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████

██████████████████████████████████████████████████

███████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

████████████████████████████████[3]

     ATC and CI entered into a Master Consulting Services Agreement (the "**MCSA**") on or about January 23, 2017. *Answer,* Dkt. No. 56, ¶ 42. The MCSA included a confidentiality provision requiring ATC to keep CI's proprietary technology confidential. ██████████████████

██; *Compl.* Dkt. No. 1, ¶ 46. ██████████████████████████████████

████████████████████████████████████████████████████████

██████████████████████  ████████████  ███████████████████████████

_____

█████████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████
███████████████████████████████████         ████████████████████
███████████████████████████████████████████████████████
██████████████

███████████████████████████████████████████████████████

███████████████████████████████████████.

  ████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████████

██████████████████████████████████████████████████████

██████████████. ATC assigned a team of people to work with CI during the contract (the "**Co-ordination Team**"). Ṣee *Drouin Dep.* 384:25-385:5 (15 to 20 ATC employees had accounts on CI's system).

During the term of ATC's contract with CI, ATC decided to copy CI's technology so that it would no longer need CI's services. ████████████████████████████; *Compl.* ¶ 61. ATC secretly assigned a team of its employees to work on copying CI's technology (the "**Covert Copying Team**"). ████████████████████████████████████████████

██████; *Compl,* ¶ 62. ████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████

████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████

### III.    PROCEDURAL POSTURE

CI filed a complaint with this Court on June 15, 2018, alleging violation of the Defend Trade Secrets Act (18 U.S.C. § 1836), misappropriation of trade secrets under Massachusetts law, contract breach, and other claims. Dkt No. 1. On July 30, 2018, ATC filed a motion to dismiss this case or in the alternative to compel arbitration. Dkt No. 17. This Court granted the motion to compel arbitration, denied the motion to dismiss, and ordered that the case be administratively closed. Dkt. Nos. 50, 63, 66 (docket text). On December 13, 2018, CI filed an arbitration demand with AAA. *Demand for Arbitration Subject to Claimant's Objection to the Tribunal's Jurisdiction*, attached as **Exhibit K**. The parties then began arbitration before the Tribunal. <u>See</u> *Opinion and Order, March 4, 2020,* at 2, attached as **Exhibit L** (discussing the activity that occurred in the arbitration). On June 19, 2019, the Tribunal set the trial date to be December 9, 2019. *Email from Richard Howell to Counsel to the Parties, (June 19, 2019, 3:22PM)* attached as **Exhibit M**. CI was ready, willing, and able to try its claims on the schedule set by the Tribunal and continued to make all necessary preparations, including completing discovery and exchanging expert reports. <u>See</u> *Order and Opinion, March 4, 2020*, at 2-3 (discussing discovery status and activity in the arbitration); ███████████████████████████████

██████████████████████████████████████████

███████████████████████████████████████. 

███████████████████████████████████████████

███████████████████████████████████████████ Over the

course of the first eight-plus months of arbitration (December 15, 2018 through September 4, 2019), AAA invoiced CI a total of $61,250 in arbitration and administrative fees. *Detail Invoice/Statement, December 19, 2019,* attached as **Exhibit O**. Then, on September 5, 2019, three months before trial, AAA invoiced CI for an additional $207,900 in arbitration fees, bringing the total to $269,150. *Detail Invoice/Statement.* ████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████.

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████ Because CI was unable to pay the September 5, 2019 AAA invoice, the Tribunal suspended the arbitration on November 18, 2019. *Order, November 18, 2019,* attached as **Exhibit P**.

████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████ On January 17, 2020, CI

opposed ATC's motion and made a cross-motion, asking that the Tribunal stay arbitration proceedings while CI moved in federal court for a determination regarding whether CI's inability to pay the arbitration fees rendered the arbitration illusory. *CellInfo's Opposition to Respondents' AAA R-57 Motion and Cross-Motion to Certify Question to Federal Court,* attached as **Exhibit R**. After additional briefing, the Tribunal (1) ruled that the arbitration would be terminated without prejudice if the outstanding arbitration fees were not paid, but offered ATC the opportunity to pay CI's portion of the arbitration fees before March 31, 2020 if ATC wished to continue the arbitration; (2) denied ATC's motion for a default award; and (3) found that it did not have authority to issue the relief requested in CI's cross-motion, explaining that such relief was unnecessary because after termination of the arbitration, "CI may seek any relief to which it believes itself entitled in any other forum." *Opinion and Order, March 4, 2020.* ATC did not pay CI's portion of the arbitration fees by the March 31, 2020 deadline set by the Tribunal, so on April 21, 2020 the Tribunal terminated the arbitration without issuing a final award or judgement and without prejudice to any party. See *Final Order, April 21, 2020,* attached as **Exhibit S** (terminating the arbitration); *Opinion and Order, March 4, 2020* (denying default award or dismissal with prejudice).

███████████████████████████████████████████████████████

██████████████████████████████████████████████████████████

█████████████████████████████████████

## IV.   ARGUMENT

### A.  The Case Should Be Reopened Because the Arbitration for Which It Was Stayed Has Been Terminated.

A party to a case that has been administratively closed or stayed[4] to allow for arbitration

---

[4] *Psara Energy, Ltd. v. Advantage Arrow Shipping, L.L.C.*, 946 F.3d 803, 808 (5th Cir. 2020) ("The effect of an administrative closure is no different from a simple stay[.]").

is entitled to have the case reopened when arbitration concludes. <u>See</u> *Lehman v. Revolution Portfolio LLC*, 166 F.3d 389, 392 (1st Cir. 1999) ("[A]n administrative closing has no effect other than to remove a case from the court's active docket and permit the transfer of records associated with the case to an appropriate storage repository" and does not "bar a party from restoring the action to the Court's active calendar upon an appropriate application.")[5] An administratively closed case may be reopened either at the judge's discretion or "at the request of a party." <u>Id.</u> Here, the Court administratively closed the case for arbitration, which was conducted and subsequently terminated without prejudice to any party in accordance with the agreed-upon AAA rules. *Opinion and Order, March 4, 2020,* p 5.; *Final Order, April 21, 2020.* Now that the basis for the administrative closure no longer applies, the case should be reopened upon CI's request. <u>See</u> *Lehman*, 166 F.3d at 392; *Psara Energy*, 946 F.3d at 808.

### B. CI is Entitled to a Trial on the Merits of Its Claims Because Its Inability to Pay Arbitration Fees Does Not Bar Its Access to Federal Court Under the FAA.

An agreement to arbitrate is not a suicide pact. The rights of a claimant do not die when an arbitral forum fails to resolve its claims. <u>See</u> *Tigges v. AM Pizza, Inc.*, C.A. No. 16-10136-WGY, 2016 U.S. Dist. LEXIS 100366, *1, 46 (D. Mass. July 29, 2016) (Young, J.) ("The FAA does not place arbitration agreements on a 'pedestal' on which all other legal rights are to be sacrificed."). One such right that survives a failed arbitration is the Seventh Amendment right to a jury trial. The FAA does not eliminate this Constitutional right, it simply postpones its exercise until an arbitration "has been had in accordance with the terms of the [parties'] agreement." 9 U.S.C. § 3; *USM Corp. v. GKN Fasteners, Ltd.*, 574 F.2d 17, 20 (1st Cir. 1978). When an

---

[5] Stays and administrative closures are not "final decisions" that end litigation. <u>See</u> *Budinich v. Becton Dickinson & Co.*, 486 U.S. 196, 199 (1988), <u>citing</u> *Catlin v. United States*, 324 U.S. 229, 233 (1945) ("A 'final decision' generally is one which ends the litigation on the merits and leaves nothing for the court to do but execute the judgment.") (internal quotes omitted).

arbitration is terminated without resolving one or more claims through no fault of the claimant, the claimant maintains its Constitutional right to have any unresolved claims tried by a jury in federal court. *USM Corp.*, 574 F.2d at 20. Further, under the "effective vindication" doctrine, an illusory arbitration that offers a claimant no real opportunity to have its claims heard cannot impede the claimant's right to have those claims tried in court. *Awuah v. Coverall N. Am., Inc.*, 554 F.3d 7, 15 (1st Cir. 2009).

CI complied with all of the rules of arbitration and did everything within its power to prosecute its claims right up until it was unable to pay the $207,900 AAA invoice of September 5, 2019. It is entitled to have its claims tried on their merits before this Court because (1) CI's Seventh Amendment right to a jury trial survives an inconclusive arbitration; and (2) CI's inability to pay the $207,900 invoice rendered the arbitration illusory under the effective vindication doctrine. Further, (3) ATC waived any right it may have had to continue the arbitration when it refused to pay CI's share of the remaining arbitration costs.

> **1. The arbitration was "had in accordance with the terms of the [parties'] agreement," leaving CI's unresolved claims subject to its Seventh Amendment right to a jury trial.**

The FAA does not eliminate the role of federal courts in adjudicating disputes subject to arbitration clauses. Rather, the FAA provides that compelling arbitration and granting a corresponding stay merely suspends litigation **until** such time as the arbitration "has been had" (*i.e.*, closed) in accordance with the rules of the arbitral forum selected by the parties. 9 U.S.C. § 3; *USM Corp.*, 574 F.2d at 20 (arbitration "has been had in accordance with the terms of the [parties'] agreement" when it has been closed, for whatever reason, under the applicable agreed-upon arbitration rules that govern the arbitration.). Once an arbitration "has been had," any remaining unresolved issues or claims revert to the district court's jurisdiction. Id.; *Tillman v. Tillman*, 825

F.3d 1069 (9th Cir. 2016) (see discussion below). A federal district court is required to exercise this reacquired jurisdiction under Section 3 of the FAA to adjudicate any unresolved claims that implicate the claimant's Seventh Amendment right to a trial by jury. *USM Corp.*, 574 F.2d at 20, citing *Beacon Theatres v. Westover*, 359 U.S. 500 (1959) ("The right to a jury trial is guaranteed by the seventh amendment and, as such, deserving of stringent safeguards[,]" such that when "the non-judicial proceedings are closed" a court must hold a jury trial on unresolved, post-arbitration legal issues.). The right to a jury trial survives  arbitration because an order under Section 3 of the FAA "staying further proceedings pending the outcome of arbitration  . . . does not finally dispose of [a claimant's] right to a jury trial," it "merely postpone[s]" the exercise of that right. Id.

Here, CI was compelled to arbitrate its claims, postponing its underlying federal civil action pursuant to Section 3 of the FAA.[6] CI then initiated arbitration proceedings with AAA, which the parties agreed would be "governed by the Commercial Arbitration Rules of the American Arbitration Association." *Demand for Arbitration Subject to Claimant's Objection to the Tribunal's Jurisdiction; Memorandum of Decision,* Dkt. No. 67, (quoting Section 7.1 of the MCSA). ███████████████████████████████████

███████████████████████████████████████

███████████████████████████████████████

---

[6] This Court compelled arbitration and stayed CI's federal civil action pending arbitration pursuant to Section 3 of the FAA. *Order,* Dkt. No. 63.

[7] ████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████ The Tribunal then gave ATC the option of paying the invoice by March 31, 2020, if it wanted the dispute arbitrated. *Opinion and Order, March 4, 2020,* p. 1. ATC declined to do so. *Final Order, April 21,2020.* As a result of CI's inability to pay the September 5, 2019 AAA invoice and ATC's decision not to pay it, the Tribunal terminated the arbitration proceedings on April 21, 2020, pursuant to AAA Rule R-57. *Final Order, April 21, 2020.* The Tribunal's termination was without any award or judgment, leaving CI's claims against ATC unresolved. <u>See</u> *Final Order* (terminating proceeding); *Opinion and Order, March 4, 2020,* p. 5 (denying default award or dismissal with prejudice). Because the parties' arbitration was terminated pursuant to the agreed-upon rules of the forum – specifically, AAA Rule R-57 – without an adjudication on the merits, the arbitration was "had in accordance with the terms of the [parties'] agreement." Therefore, under Section 3 of the FAA, jurisdiction over CI's claims reverts to this Court, which must adjudicate CI's unresolved claims at law in order to effectuate CI's Seventh Amendment right to a jury trial. 9 U.S.C. § 3; U.S. Const. Amend. 7; and *USM Corp.,* 574 F.2d at 20.

CI's inability to pay the $207,900 September 5 invoice cannot be construed as a breach of CI's agreement to arbitrate or of the Court's order that the parties arbitrate, since CI did everything in its power to comply with the agreement and the order. ████████████████; <u>see also</u> *Opinion and Order, March 4, 2020*, p. 2 (discussing CI's participation in the arbitration). But, even if, *arguendo*, CI's inability to pay were construed as a technical breach of one or both of these obligations, such an unintentional breach cannot be a basis for a court abrogating CI's Seventh Amendment right to trial by jury. The Court has a duty to adjudicate disputes before it unless some "extraordinary" exception applies. *Planned Parenthood League v. Bellotti*, 868 F.2d

459, 464 (1st Cir. 1989), <u>citing</u> *Colorado River Water Conservation Dist. v. U.S.*, 424 U.S. 800 (1976) (district court decision to abstain from adjudicating the merits of the underlying case reversed because of "the Supreme Court's admonition that abstention from the exercise of federal jurisdiction is the exception, not the rule"). None of the three exceptions — (i) the case should not be decided by a federal court, (ii) the case was polluted by judicial malfeasance, or (iii) a parallel case is being heard in state court — applies here. <u>Id.</u> (discussing the *Burford* and *Younger* exceptions); *Colorado River Water*, 424 U.S. at 813-814. Further, depriving CI of a jury trial on the basis of a purported breach over which it had no control would be a "harsh sanction" in violation of the First Circuit's "strong policy favoring the disposition of cases on the merits." *Velazquez-Rivera v. Sea-Land Service, Inc.*, 920 F.2d 1072, 1075 (1st Cir. 1990) (reversing the district court's dismissal of plaintiffs' claims because plaintiffs had no culpability with respect to, and had no control over, their attorney's failure to appear at a pre-trial conference).[8]

The Ninth Circuit addressed a materially identical fact pattern in *Tillman v. Tillman*, 825 F.3d 1069. Its analysis is instructive here. The *Tillman* court concluded that the plaintiff/claimant was entitled to continue her case in the federal district court after the parties' arbitration was terminated because (i) the arbitration "ha[d] been had in accordance with the terms of [the parties'] agreement" under Section 3 of the FAA when it was terminated pursuant to agreed-upon AAA Rule R-57; (ii) the arbitration resulted in no award or judgment on the merits, leaving the plaintiff/claimant's claims unresolved; and (iii) the termination was due to the plaintiff/claimant's inability to pay the required arbitration fees. <u>Id.</u> Based on these factors, the district court had an "obligation and a duty to decide" the case on its merits not only to avoid a harsh sanction, but also

---

[8] Even if the Seventh Amendment were not implicated here, the Court would still need to adjudicate CI's claims on their merits to avoid a harsh or unjust result.

because proceeding in the district court was "the only way her claims [would] be adjudicated." Id. at 1075-76. All of these factors apply here: (i) the arbitration was held "in accordance with [CI and ATC's] agreement" under AAA rules; (ii) the arbitration resulted in no award or judgment on the merits, leaving CI's claims unresolved; and (iii) the termination of the arbitration was due to CI's inability to pay the required arbitration fees.

Because the arbitration "has been had in accordance with the [parties'] agreement" without resolving CI's claims, CI is entitled to have those claims tried in this Court. See 9 U.S.C. § 3; U.S. Const. Amend. 7; *USM Corp.,* 574 F.2d at 20; *Planned Parenthood*, 868 F.2d at 464; *Velazquez-Rivera*, 920 F.2d at 1075; *Tillman*, 825 F.3d at 1075-76.

>    **2.   CI is entitled to have its case tried in court because an illusory arbitration cannot abrogate a claimant's right to have its claims adjudicated.**

Under the effective vindication doctrine, an illusory arbitration cannot bar the adjudication of federal statutory claims in court. *Awuah v. Coverall N. Am., Inc.*, 554 F.3d 7, 15 (1st Cir. 2009) (an arbitration is illusory if it is "structured so as to prevent a litigant from having access to the arbitrator to resolve claims," in which case "a court should. . . decide the entire dispute itself.").[9] Specifically, an arbitration regime is illusory if the costs of the arbitration are so high as

---

[9] ████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████ *Awuah* turns not on unconscionability, but on whether the arbitration was rendered illusory by the claimant's inability to pay arbitration fees under the effective vindication doctrine. 554 F.3d at 13 ("Our concern here is not with unconscionability…but more narrowly with whether the arbitration regime here is structured so as to <u>prevent</u> a litigant from having access to the arbitrator to resolve claims.") (emphasis in original).

to make access to the forum impracticable, rendering the fees "excessive." *American Express Co. v. Italian Colors Restaurant*, 570 U.S. 228, 236 (2013); *Awuah*, 554 F.3d at 13; *Green Tree Fin. Corp. v. Randolph*, 531 U.S. 79, 90 (2000). Here, the case was ready to proceed to trial before the Tribunal, but the arbitration was terminated because CI lacked the funds to pay the September 5, 2019, $207,900 invoice. ▮▮▮▮▮▮▮▮▮▮▮▮▮; see *Opinion and Order, March 4, 2020,* at 2 (discussing the activity that occurred in the arbitration); *Final Order, April 21, 2020*.

　　　In *Awuah*, the First Circuit implicitly adopted the Eleventh Circuit's effective vindication analysis from *Musnick v. King Motor Co. of Fort Lauderdale*,[10] which requires a claimant to provide evidence of two things to demonstrate that arbitration fees are excessive: (1) "the amount of the fees [the claimant] is likely to incur" and (2) the claimant's "inability to pay those fees." 325 F.3d 1255, 1260 (11th Cir. 2003), citing *Green Tree*, 532 U.S. at 96.[11] The *Awuah* court observed that to be "excessive," arbitration fees need not be objectively high, since "all formal dispute resolution involves costs and inconvenience," but rather the inability to pay arbitration costs must "prevent a litigant from having access to the arbitrator to resolve claims." 554 F.3d at 13 (emphasis in original).[12] Here, CI's inability to pay the $207,900 September 5, 2019 AAA invoice resulted in the arbitration being closed in accordance with AAA rules, thereby preventing CI "from

---

[10] See *Awuah*, 554 F.3d at 13.

[11] The 7th and 8th Circuits have also adopted this test. See *Livingston v. Associates Fin., Inc.* 339 F.3d 553, 557 (7th Cir. 2003); *Faber v. Menard, Inc.*, 367 F.3d 1048, 1054 (8th Cir. 2004).

[12] The facts of this case would also satisfy the additional prong of the 4th Circuit's effective vindication test that asks whether arbitration costs exceed the cost of litigating the matter in court. See *Bradford v. Rockwell Semiconductor Sys., Inc.*, 238 F.3d 549, 557 (4th Cir. 2001). ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Had this matter been litigated in court throughout the process, there would not have been any arbitration fees and none of the other costs would have been materially different.

having access to the arbitrator to resolve claims."[13] See Id.; ███████████████████ ; *Final Order, April 21, 2020.*

While the effective vindication doctrine is usually raised prospectively – forcing courts to predict whether arbitration costs will exceed claimants' ability to pay[14] – this Court faces no such difficulty. CI paid its arbitration fees until it ran out of money. *See Opinion and Order, March 4, 2020,* p. 2 (discussing activity that occurred during the arbitration); *Detailed Invoice/Statement, December 19, 2019* (showing amounts charged to and paid by CI); ██████████ . CI's inability to pay the $207,900 September 5, 2019 invoice rendered the arbitration illusory under the effective vindication doctrine, entitling CI to have its claims tried before this Court. See *Italian Colors*, 570 U.S. at 236; *Awuah*, 554 F.3d at 13; *Green Tree*, 531 U.S. at 90, 96.

3. **ATC waived any objection to the termination of the arbitration and resumption of litigation in court by declining to pay the September 5 invoice.**

A party to an arbitration agreement waives its right to further arbitration when it refuses to pay arbitration costs that the other party cannot afford to pay. *Weiler v. Marcus & Millichap Real Estate Inv. Servs., Inc.*, 22 Cal. App. 5th 970, 981 (2018) ("With the rising costs of arbitration, [waiver based on a party's failure to pay the other side's share of arbitration fees] ensures those compelled to arbitrate will not, as a result, be inherently disadvantaged."); see also *Claudio Brandao v. Jan-Pro Franchising Int'l*, 95 Mass. App. Ct. 1103, at *8 (2019) (when one party cannot afford arbitration fees, the other party must "agree to bear the arbitration fees or waive the right to proceed to arbitration"). Here, the Tribunal specifically offered ATC the opportunity to pay CI's September 5 invoice, but ATC declined to do so. *Opinion and Order, March 4, 2020,* p.

---

[13] As discussed above, Section IV(B)(1), supra, ████████████████████████████████ ████████████████████████████████████████████████████████████████████

[14] See e.g., *Awuah*, 554 F.3d at 9, 12-13; *Livingston*, 339 F.3d at 557; *Faber*, 367 F.3d at 1054.

1 ("In the event that ATC elects to pay CellInfo's outstanding unpaid charges by March 31, 2020, the Tribunal will proceed to a hearing on the merits of all claims and counterclaims."); *Final Order* ("Respondents have [not] elected to pay Claimant's outstanding unpaid charges."). ATC therefore has no grounds on which to complain that the arbitration was terminated, opening the door to adjudication of the dispute in this Court. See *Weiler*, 22 Cal. App. 5th 970 at 981; *Brandao*, 95 Mass. App. Ct. 1103, at *8.

### C. Even if, *Arguendo*, the Decision to Try the Case Were Discretionary, the Court Should Hold a Trial to Prevent Grave Injustice and to Protect Public Safety.

As discussed above, Section B, supra, the Court must reopen the case and try CI's claims on their merits. However, even if, *arguendo*, the Court had discretion regarding whether to hold a trial in this matter, it should do so to serve (1) the interest of justice and (2) the public interest.

### 1. Failure to try the case on its merits would cause grave injustice by allowing ATC to steal CI's intellectual property without consequence.

This Court is governed by the Federal Rules of Civil Procedure, the first of which commands that the others "should be construed, administered, and employed by the court and the parties to secure the **just**, speedy, and inexpensive determination of every action and proceeding." Fed. R. Civ. P. 1 (emphasis added). Here, ATC blatantly and unrepentantly stole and used CI's proprietary technology. While ATC was contractually bound to keep CI's proprietary technology confidential under the MCSA, ATC secretly organized a team of its employees that worked ███████████████ to copy CI's technology, so that ATC would no longer need CI's services. ███████████████████████████████████████████; *Compl.,* ¶ 62. ████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

███████████████████████████████████ Allowing ATC to escape liability

for these blatant acts of contract breach, misappropriation of trade secrets, conversion, and unfair

business practices would be a grave miscarriage of justice, contrary to the mandate of the Federal

Rules. Fed. R. Civ. P. 1.

    2.  **Holding a trial in this case would serve the public interest by revealing information**
█████████████████████████████████████████████.

    Private information that is kept confidential pretrial is generally made available to the

public at trial. *Poliquin v. Garden Way*, 989 F.2d 527, 533 (1st Cir. 1993)). Here, the public

would benefit from having access to information about the dangers posed by ████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████████

██████████████████████████████████████████████████

███████████████████████████████████ ATC has hundreds of thou-

sands of cell towers around the world, including many in Brazil, but – █████████████

██████████████████████████████████████████████████

█████████████████████████████████ *Defendants' Memorandum of Law*

---

15 ███████████████████████████████████████████████████████
█████████████████████████████████████████████████████████
█████████████████████████████████████████████████████████
███████████████████████.

*in Support of Motion to Dismiss or Stay and Compel Arbitration,* Dkt. No. 18 at p. 5-6 (describing ATC's portfolio of sites). ███████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████ A public trial on CI's claims would reveal detailed information about the nature and extent of the public safety hazard ████ ██████████ that could be used by regulators, as well as by people ████████████████ ██████████████████████, to reduce the risk of death and serious injury.

When a court has discretion whether to hold a public trial, it should give great weight to public policy implications, including whether the trial would shed light on public safety threats. Here, the potential for information made public at trial to mitigate public safety hazards ████████ ██████████ weighs in favor of granting CI's motion for a trial. See *Poliquin*, 989 F.2d at 533.

## V.   CONCLUSION

CI's inability to pay excessive arbitration fees does not close the door to justice. The FAA does not abrogate CI's Seventh Amendment right to a trial by jury on claims not resolved in arbitration. Nor can the Court refuse to exercise jurisdiction over such unresolved claims on the basis of an illusory arbitration. For these reasons and as discussed above, CI respectfully requests that the Court issue an order reopening the case and scheduling it for trial at the Court's earliest convenience, pursuant to the attached proposed order.

WHEREFORE, CellInfo, LLC respectfully requests that this Court grant its Motion and:

a)  Reopen this action;

b)  Set a date for this matter to be tried before a jury;

c)  Set a date for a final pretrial conference;

d) Require that by 60 days prior to the final pretrial conference Defendants supplement their discovery responses (including initial disclosures, document production, and answers to interrogatories) to reflect any changes or additional information since such discovery responses were provided to CellInfo;

e) Set a deadline of 28 days prior to the final pretrial conference for CellInfo to update its damages expert disclosures based on new information acquired since the original report was produced;

f) Schedule any other pretrial disclosures, hearings, and other events, as required by the rules or determined to be appropriate by the Court; and

g) Grant whatever other relief this Court deems just and fair.

DATED: July 2, 2020                           CellInfo, LLC
                                              By Its Attorneys,

                                              /s/ Kenneth R. L. Parker
                                              Kenneth R. L. Parker (BBO #688987)
                                              Shaun P. Keough (BBO # 688868)
                                              PARKER KEOUGH LLP
                                              *Street Address:*
                                                51 Winchester St., Suite 205
                                                Newton, MA 02461
                                              *Mailing Address:*
                                                P.O. Box 590006
                                                Newton, MA 02459
                                              Tel.: (617) 841-2418
                                              Fax.: (617) 963-8315
                                              E-mail: kparker@parkerkeough.com

*Page 20*

## **<u>GOOD FAITH CONFERRAL</u>**

Pursuant to L.R. 7.1(a)(3), I certify that I conferred on June 25, 2020 in good faith with counsel for Defendants prior to filing this motion, but was unable to resolve or to narrow the issues raised herein.

<u>/s/ Kenneth R. L. Parker</u>
Kenneth R. L. Parker (BBO #688987)

## **<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that this document filed through the CM/ECF system will be sent electronically to the registered participants as identified on the NEF and paper copies will be sent to those indicated as non-registered participants on this July 2, 2020.

<u>/s/ Kenneth R. L. Parker</u>
Kenneth R. L. Parker (BBO #688987)