**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| CELLINFO, LLC<br><br>             Plaintiff,<br><br>     v.<br><br>AMERICAN TOWER CORPORATION,<br>AMERICAN TOWER LLC, AMERICAN TOWER<br>DO BRASIL – CESSAO DE<br>INFRAESTRUCTURAS LTDA, and ATC IP LLC,<br><br>             Defendants. | Civil Action No. 18-cv-11250-WGY<br><br>PUBLIC VERSION |

**DEFENDANTS' CONSOLIDATED MEMORANDUM**
**IN OPPOSITION TO PLAINTIFF'S MOTION TO REOPEN CASE (DKT. NO. 68), AND**
**IN SUPPORT OF DEFENDANTS' SERVED MOTION FOR RULE 11 SANCTIONS**

## Table of Contents

I.   INTRODUCTION ........................................................................................ 1

II.   BACKGROUND ......................................................................................... 2

III.   ARGUMENT ............................................................................................. 7

   A.   In 2018, This Court Expressly Addressed and Rejected the Very Argument That
CellInfo Now Raises to Support Its Request to Re-Open the Case ........................... 7

   B.   The Court's 2018 Ruling Was Correct: The Law Does Not Excuse CellInfo from Its
Obligation to Arbitrate the Dispute, and Its Argument Otherwise Lacks Any Good Faith Legal
Basis  8

   C.   CellInfo's Continuing Misconduct Is Inexcusable and Justifies Rule 11 Sanctions ...... 13

IV.   CONCLUSION .......................................................................................... 16

# Table of Authorities

**Page(s)**

**Cases**

*American Express Co. v Italian Colors Rest.*,
570 U.S. 228 (2013)............................................................................................8, 9, 10

*Awuah v. Coverall N. Am., Inc.*,
554 F.3d 7 (1st Cir. 2009).................................................................................9, 10, 13

*Chavarria v. Ralphs Grocery Co.*,
733 F.3d 916 (9th Cir. 2013) ..........................................................................................9

*Cooter & Gell v. Hartmax Corp.*,
496 U.S. 384 (1990)..................................................................................................15, 16

*Dillon v. BMO Harris Bank, N.A.*,
856 F.3d 330 (4th Cir. 2017) .........................................................................................9

*Nesbitt v. FCNH, Inc.*,
811 F.3d 371 (10th Cir. 2016) .......................................................................................9

*Redondo Constr. Corp. v. Izquierdo*,
746 F.3d 21 (1st Cir. 2014) ............................................................................................7

*Silva v. Witschen*,
19 F.3d 725 (1st Cir. 1994).........................................................................................15

**Other Authorities**

Fed. R. Civ. P. 11 ........................................................................................................2, 15

Federal Arbitration Act, Section 4 ................................................................................7

Defendants American Tower Corporation, American Towers LLC, American Tower do Brasil – Cessao de Infraestructuras LTDA, and ATC IP, LLC (*collectively*, "American Tower") provide this consolidated memorandum (1) in opposition to Plaintiff CellInfo, LLC's ("CellInfo") Motion to Reopen Case and Set Trial Date, and (2) in support of Defendants' Served Motion for Rule 11 Sanctions.

## I.      INTRODUCTION

The sole argument that CellInfo presents in support of its request to re-open this case, that its arbitration obligation prevented access to justice, has already been addressed and rejected twice. On the second occasion, the arbitration panel denied CellInfo's request to transfer the case to district court, retained jurisdiction over the dispute, and terminated the arbitration due to CellInfo's decision not to pay its remaining arbitration fees. This Court, however, had already concluded, over a year earlier, that such an argument was not available to CellInfo, in its ruling on American Tower's motion to compel arbitration. Notably, CellInfo did not raise the issue or argument back in 2018 when it was before this Court. The Court itself raised it as part of a comprehensive analysis of whether American Tower had demonstrated that CellInfo is bound by the arbitration provision.

This Court not only raised the issue, but emphasized its importance at the outset of its written memorandum. The Court's December 2018 ruling is the law of the case, and comprehensively resolves the present motion in American Tower's favor.

This Court and the arbitration panel both got it right. The jurisprudence on the "effective vindication" doctrine is universally in accord with the outcome reached in both fora. The agreed-to arbitration provision demonstrably provided both parties with access to effectively resolve disputes. CellInfo aggressively litigated throughout the arbitration proceedings, and spent lavishly to do so. So what happened?

1

CellInfo did not lack the resources to litigate. It lost the stomach to arbitrate once it was objectively clear that it could not prevail. The arbitration panel expressed it well in its order dismissing the arbitration: "following adverse rulings on several key motions, CellInfo has stopped paying its share, and without further support by its investor, Twin Focus Capital, cannot do so." The intentional decision not to pay the remaining arbitration fees was a volitional act to avoid the looming and inevitable outcome in arbitration. It is difficult to contemplate that any legal or equitable principle would excuse CellInfo from its obligation to arbitrate under such circumstances. None does.

CellInfo, therefore, must know (or at a minimum should have known) that the present motion was frivolous and baseless. Most troubling, CellInfo ignores the fact that this very Court decided this issue in December 2018. Nothing has changed. CellInfo's conduct since that ruling has only demonstrated that this Court, and later the arbitration panel, got it right. Thus, should CellInfo decline to withdraw its Motion by August 19, 2020 when the 21-day waiting period under Rule 11(c)(2) expires, sanctions under Fed. R. Civ. P. 11(b) are warranted here. American Tower asks that the Court (1) deny CellInfo's motion to re-open the case, (2) dismiss the civil action with prejudice, and (3) as sanctions for the frivolous Motion, award American Tower its reasonable fees and costs if CellInfo does not withdraw the Motion by August 19, 2020.

## II.    BACKGROUND

The parties were last before this Court over 18 months ago. In its December 2018 Memorandum of Decision ("Memorandum"), the Court granted Defendants' request to compel arbitration. In that Memorandum, the Court stated:

> The way to construe an agreement is to start with the agreement itself. This one has a broad arbitration clause. <u>It is important to note that *this is not* a 'forced arbitration,*'</u> that one-sided species of arbitration unconscionably forced on vulnerable consumers and workers and almost universally reviled, enforceable only due to the mandate of a slim majority of the Supreme Court. *See American Express*

*Co. v Italian Colors Rest.*, 570 U.S. 228, 238-39 (2013); *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 344-52 (2011)).

<u>No. It appears that the broad arbitration clause here is the product of mutual negotiation among independent equals, each represented by skilled counsel. This is precisely the knowing mutual resort to arbitration to which the Federal Arbitration Act, 9 U.S.C. §§ 3-4 applies</u>.

Dkt. No. 67, Memo. of Decision at 6-9 (Dec. 19, 2018) (the "Decision") (emphases added).

CellInfo was represented by experienced lawyers from Cooley LLP, who later joined King & Spalding ("K&S").[1] CellInfo never challenged or appealed the Court's ruling that CellInfo was bound by the arbitration provision.

After the Court's December 2018 ruling, a three-member arbitration panel was convened. All parties understood from the outset that the panel charged an aggregate hourly rate of $2,700. *See* Declaration of Andrew H. DeVoogd ("DeVoogd Decl.") at ¶¶ 4-5 and **Ex. A** (Arbitrator Compensation Notices). After extensive briefing and argument, the panel determined that the dispute was arbitrable and could proceed before the panel. *Id.* at ¶¶ 7 and **Ex. B** (Op. and Order (April 24, 2019)).

CellInfo then filed a motion for preliminary measures, which sought to continue the terms of the preliminary injunction to which the parties had stipulated after the Court granted American Tower's motion to compel arbitration. *Id.* at ¶ 8 and **Ex. C** (Ltr Requesting Interim Measures (Feb. 19, 2019)); Dkt. No. 66, Stipulated Preliminary Injunction (Nov. 20, 2018). The panel denied that request for interim relief, ruling that CellInfo could not demonstrate irreparable harm. *Id.* and **Ex. D** (Op. and Order on Interim Measures (Sept. 10, 2019)).

---

[1] Both Cooley and K&S are international law firms, with more than 1,000 lawyers. *See* Declaration of Andrew H. DeVoogd ("DeVoogd Decl.") at ¶ 6. CellInfo is also represented by the Boston firm of Todd & Weld LLP as litigation co-counsel. *Id.* Before this, CellInfo was also represented by the Massachusetts firm of ███████████████—skilled counsel as found by this Court. *Id.*; Dkt. No. 67 at 6.

In arbitration, CellInfo sought additional, extensive document discovery beyond the 40,000 pages American Tower had already produced. DeVoogd Decl. at ¶ 9. CellInfo took numerous fact depositions, including a week's worth of depositions in Florida. *Id.* at ¶ 10. And it demanded (and received) full access to American Tower's source code and accused internal software platform, and sought the depositions of personnel from an American Tower contractor based in Barcelona, Spain. *Id.* at ¶ 11. Along the way, CellInfo created a number of discovery and procedural disputes that required additional attention from the panel. *Id.* at ¶¶ 9, 14 and **Ex. E** (Letter Briefs). CellInfo deposed five American Tower employees, including the CEO of defendant American Tower Brazil, while American Tower took only two depositions: Nate Drouin and Paul Karger. *Id.* at ¶ 10-13. American Tower also brought three witnesses from Brazil to sit for depositions in Miami. *Id.* at ¶ 12.

Throughout the dispute, CellInfo was at all times ████—and co-managed—by the principals of a multi-billion dollar investment fund, Twin Focus Capital Partners ("TFCP"). As TFCP principal and CellInfo Senior Advisor Paul Karger testified under oath, TFCP frequently provided CellInfo ██████████, effectively acting as CellInfo's ████████. *See, e.g.,* DeVoogd Decl. at ¶ 15 and **Ex. H** (Depo. Tr. of Paul Karger at 46:16-23 (TFCP provided "████████████"); 183:22-186:5 (TFCP communicated █████████ ████████████████)). Mr. Karger, and documents CellInfo produced, also confirmed that TFCP and its "friends and family" investors ████████ █████████ through the end of August 2019, by which point they had given nearly █████ ████████████████. *See id.* at ¶ 16 and **Ex. H** at 95:10-96:20; **Ex. I** (Summary of ██████████). Further, in September 2019 Mr. Karger testified that TFCP intended to continue funding CellInfo's litigation. *Id.* and **Ex. H** (Karger Depo. Tr. at

140:21-141:18 ("Q: Has [TFCP] invested additional [litigation financing] sums after August 30[th] [2019]? A: <u>We intend to</u>.") (emphasis added).

Using the steady ███████████████, CellInfo paid its counsel over ████████ ███████████. DeVoogd Decl. at ¶ 17 and **Ex. J** (CellInfo Annual Reports). In fact, after the district court sent the dispute to arbitration, CellInfo ████████████████████████████ ████████████████████████████████████. *Id.* and **Ex. I**. And this ███████████████ ██████████████████ until just days after the parties exchanged rebuttal expert reports in October, 2019. By that time, CellInfo knew two critical truths that were fatal to its case: first, it failed to demonstrate irreparable harm, and had no hope of an injunction; and second, it had no viable claim for monetary damages as a matter of law. DeVoogd Decl. at ¶¶ 18-22 and **Ex. K** (Expert Report of Douglas Kidder). The evidence also showed that American Tower never had access to the CellInfo software base—the basis for CellInfo's misappropriation theory. DeVoogd Decl. at ¶ 23 and **Ex. M** (Expert Report of Dr. Phillip Greenspun).

Once it was apparent that CellInfo had no claim for monetary damages as a matter of law and could not, in any event, substantively prove any of its claims, things changed immediately and dramatically. Just three business days after the parties exchanged rebuttal expert reports, on October 23, 2019, King & Spalding notified the Panel in writing that it was withdrawing as CellInfo's arbitration counsel, without any explanation.[2] DeVoogd Decl. at ¶ 24, **Ex. N** (Letter from Brogan to Panel). In that letter, CellInfo sought a stay of all deadlines and time to secure successor counsel. *Id.* The Panel reserved judgment on that request and reminded the parties that

---

[2] During a teleconference with the Panel, King & Spalding refused to provide any explanation for its withdrawal, stating that it was not obligated to do so under AAA rules. DeVoogd Decl. at ¶ 24. CellInfo claims that, before this, King & Spalding had ████████████████████████████████████ ██████████████████. Mot. at 7, citing 2nd Drouin Aff. at ¶ 9. King & Spalding recently filed a Motion to Withdraw as counsel in this forum, too. *See* Dkt. No. 78 (July 27, 2020).

the arbitration might be terminated for lack of payment. *Id.* at ¶ 25, **Ex. O** (Email from Holwell, J. (Oct. 30, 2019)). American Tower timely paid its portion of arbitration expenses. CellInfo did not. *Id.* at ¶ 26. As a result, on November 18, 2019, the Panel suspended the proceedings and vacated all dates on the procedural schedule, including the imminent week-long evidentiary hearing scheduled for December 9-13, 2019. *Id.* at ¶ 27; Mot. Ex. P.

Based on CellInfo's refusal to pay its arbitration costs, American Tower moved for termination of the arbitration, a finding of no liability, and an award of costs and attorneys' fees pursuant to the ███████████████████████ Master Consulting Services Agreement ("MCSA"). DeVoogd Decl. at ¶ 28; Mot. Ex. P (Suspension Order). CellInfo opposed this motion and cross-moved for "certification" to this Court, raising for the first time an "effective vindication" argument. *Id.* at ¶ 29; Mot. Ex R (CellInfo Opp. and Cross-Motion). On March 4, 2020, the panel denied the motions but stated it would continue the arbitration if American Tower elected to pay CellInfo's outstanding share of the costs. *Id.* at ¶ 30; Mot. Ex. L at 5-6 (Op. & Order, dated March 4, 2020). In its decision, the panel emphasized that "following adverse rulings on several key motions, CellInfo has stopped paying its share, and without further support by its investor, Twin Focus Capital, cannot do so." *Id.*; Mot. Ex. L at 7. The panel further noted that "CellInfo had the opportunity to present the [effective vindication theory] it now asks this panel to certify back to the Court two years later," and terminated the arbitration. *Id.*

American Tower elected not to pay CellInfo's share of arbitration costs. DeVoogd Decl. at ¶ 31. On April 24, 2020, the Panel terminated the arbitration due to CellInfo's non-payment of the arbitration fees. *See* DeVoogd Decl. at ¶ 32; Mot. Ex S (Op. & Order Terminating Arbitration). CellInfo did nothing for over two months, until its counsel reached out to American Tower to meet and confer regarding the present motion. *Id.* at ¶ 33. During those discussions, American Tower

repeatedly stated that CellInfo lacked a good faith basis to file the motion. *Id*. at ¶ 34. CellInfo filed its Motion anyway.

On July 29, 2020, counsel for American Tower sent its Motion for Sanctions Under Rule 11 and this memorandum to counsel for CellInfo. *Id*. at ¶ 35. During a meet and confer on July 30, 2020, counsel for CellInfo declined to withdraw its Motion to Reopen. *Id*. at ¶ 36.

## III.   ARGUMENT

### A.   In 2018, This Court Expressly Addressed and Rejected the Very Argument That CellInfo Now Raises to Support Its Request to Re-Open the Case

As the arbitration panel expressly noted in denying CellInfo's "effective vindication" argument, CellInfo never once argued indigence or complained about the structure of its arbitration obligation when it was before this Court in 2018. Nonetheless, in its analysis granting American Tower's request to compel arbitration, the Court raised the issue of its own accord. *See* Dkt. No. 67, Memorandum at 6-9 (Dec. 19, 2018). In fact, this is the very first thing discussed in the Analysis section of the Decision—it is impossible to miss. *Id.* The Court noted that under Section 4 of the Federal Arbitration Act ("FAA"), American Tower, as movant, had to demonstrate, among other things, that CellInfo was bound by the arbitration provision in the MCSA. Memorandum at 9. To that end, this Court concluded that

> [t]he way to construe an agreement is to start with the agreement itself. This one has a broad arbitration clause. <u>It is important to note that *this is not* a 'forced arbitration*,*</u>' that one-sided species of arbitration unconscionably forced on vulnerable consumers and workers and almost universally reviled, enforceable only due to the mandate of a slim majority of the Supreme Court. *See American Express Co. v. Italian Colors Rest.*, 570 U.S. 228, 238-39 (2013); *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 344-52 (2011)).
>
> <u>No. It appears that the broad arbitration clause here is the product of mutual negotiation among independent equals, each represented by skilled counsel. This is precisely the knowing mutual resort to arbitration to which the Federal Arbitration Act, 9 U.S.C. §§ 3-4 applies</u>.

Decision at 6 (emphases added).

7

Standing alone, these two, now clairvoyant, paragraphs from the Court's ruling to compel arbitration comprehensively resolve the present motion in American Tower's favor. The Court's 2018 legal ruling on the motion to compel arbitration is the law of the case, governs the present motion, and compels denial of the request to re-open this case. *See Redondo Constr. Corp. v. Izquierdo*, 746 F.3d 21, 26-27 (1st Cir. 2014) ("The law of the case doctrine establishes that 'when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case.'") (quoting *United States v. Matthews*, 643 F.3d 9, 12 (1st Cir. 2011)).

**B.     The Court's 2018 Ruling Was Correct: The Law Does Not Excuse CellInfo from Its Obligation to Arbitrate the Dispute, and Its Argument Otherwise Lacks Any Good Faith Legal Basis**

Ignoring this law of the case, CellInfo misapplies the "effective vindication" doctrine in a *post hoc* effort to avoid the consequences of its knowing and intentional decision to abandon the arbitration after it had become clear that there was no possibility for CellInfo to prevail. The effective vindication doctrine is an extremely narrow exception to the requirement that courts "must 'rigorously enforce'" arbitration agreements pursuant to the FAA. *American Express Co. v. Italian Colors Rest.*, 570 U.S. 228, 233 (2013) (quoting *Dean Witter Reynolds Inc. v Byrd*, 470 U.S. 213, 221 (1985)). It may excuse a party from arbitration <u>only</u> in the limited circumstances where the parties have unequal bargaining power, <u>and</u> where the dominant party has the ability to impose or dictate an arbitration provision at the time of the contract that, as a practical matter, denies the other party any real access to arbitration. *Id.* at 235-236 (citing *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U. S. 614, 637 (1985)). The analysis focuses on the structure of the arbitration regime as set out in the parties' agreement, and considers whether the framework itself will <u>prospectively</u> work to effectively bar a party's ability to seek redress for its claim. *Id.*

It is clear that this Court understood the nature and scope of the doctrine, and properly ruled in 2018 that effective vindication does not and cannot apply here. The Court emphasized that "it is important to note that this is not a 'forced arbitration.'" Memorandum at 6. It found that the CellInfo and American Tower were "independent equals," each "represented by skilled counsel," and that the agreed-to arbitration provision was the "product of mutual negotiation." *Id.* In a footnote, the Court contrasted these express findings with a discussion of the forced arbitrations appearing in a 2018 *New York Times* article where workers are "'presented with a take-it-or-leave-it contract to sign if they want to put food on the table.'" *Id.* at 6 n. 3. It is only in such dramatically inapposite circumstances where the limited doctrine may apply.

Relevant case law confirms and sharpens the point. *See, e.g.*, *Awuah v. Coverall N. Am., Inc.*, 554 F.3d 7, 15 (1st Cir. 2009) (asking whether "the arbitration regime … is structured so as to prevent a litigant from having access to the arbitrator to resolve claims" where plaintiffs were "far from sophisticated business men and women"); *Dillon v. BMO Harris Bank, N.A.*, 856 F.3d 330, 333 (4th Cir. 2017) (describing effective vindication doctrine as being concerned with a "prospective waiver" of statutory rights where plaintiff accepted click-through internet contract with payday lender for loan with 440% interest containing arbitration clause); *Chavarria v. Ralphs Grocery Co.*, 733 F.3d 916, 927 (9th Cir. 2013) (assessing whether structure of arbitration obligation itself "effectively <u>foreclose[d]</u> the pursuit of the claim" where deli clerk for supermarket chain successfully invalidated obligation incorporated into employment application and imposed "non-recoverable costs on employees <u>just to get in the door</u>" of arbitration, "foreclos[ing] the pursuit of the claim") (emphasis added); *Nesbitt v. FCNH, Inc.*, 811 F.3d 371, 373, 376 (10th Cir. 2016) (citing *Shankle v. B-G Maint. Mgmt. of Colo., Inc.*, 163 F.3d 1230, 1233-35 (10th Cir. 1999)) (affirming denial of motion to compel where structure of arbitration agreement "substantially

limited the use of the arbitral forum" for students at for-profit massage schools who signed adherence contracts with their applications obligating them to share costs of commercial arbitration without any recovery of costs upon success).

Notably, all of CellInfo's effective vindication cases pre-date the Supreme Court's decision in *American Express Co. v. Italian Colors Rest.*, 570 U.S. 228, 233 (2013). That case, which this Court cited in its 2018 Memorandum, emphasized that "the fact that it is not worth the expense involved in *proving* a statutory remedy <u>does not constitute</u> the elimination of the *right to pursue* that remedy." 570 U.S. at 236 (underlining added, italics in original). Indeed, where a party "voluntarily enter[s] into a contract containing a bilateral arbitration provision" it cannot later "escape its obligations [to arbitrate] merely because the claim it wishes to bring might be economically infeasible." *Id.* at 239 (Thomas, J., concurring) (emphasis added). That is exactly the circumstance present here. Alleged *ex post* economic hardship—even if the facts actually supported the contention, and they do not—does not allow CellInfo to invoke the doctrine.[3]

Undeterred by the law of the case and this body of case law, CellInfo contorts the effective vindication doctrine to suggest that it may be invoked where a party simply walks away from an arbitration within weeks of the arbitration hearing because it no longer wants to pay for it. No case says that, or anything close to that. As noted, the well-established jurisprudence concerning the application of the doctrine is universally consistent with this Court's analysis and conclusion in its 2018 ruling. Certainly the *Awuah* decision, upon which CellInfo primarily relies, provides no support for its argument. *See Awuah*, 554 F.3d at 15 (asking whether "the arbitration regime here is <u>structured so as to prevent a litigant from having access to the arbitrator</u> to resolve claims")

---

[3] This is particularly true in a circumstance like this one, where the cost-shifting framework in the operative contract allows CellInfo to recoup its expenses should it prevail in arbitration.

(emphasis added). This Court was well aware of the *Awuah* decision when it made its December 2018 ruling—it was the presiding district court in that long-pending case.

As the doctrine focuses on the arbitration provision itself, and its <u>prospective</u> impact on a party's ability to access arbitration, if CellInfo in good faith believed it could argue the doctrine to excuse it from arbitration, the time to raise the issue was in October 2018 when the parties were briefing American Tower's motion to compel. CellInfo never did so. And even though the Court's 2018 decision includes a lengthy discussion on how costly arbitration can be, this too failed to trigger any discussion of CellInfo's financial inability to arbitrate. Memorandum at 17-19. Regardless, the Court's ruling was correct and settled any possible issue. If CellInfo had raised it then, rather than the Court, it would not have changed the result.

The reason why CellInfo never raised the issue in 2018 is apparent from the undisputed facts. Both to fund operations and its litigation activity, CellInfo relied on third-party funding, mostly from significant investments made by principals at the multi-billion dollar investment fund, TFCP. ██████████████████████████████████████████████████████████ ████████████████████. In his deposition mere weeks before King & Spalding withdrew from the representation and CellInfo refused to pay its remaining arbitration fees, TFCP principal Paul Karger acknowledged that he and others were ██████████████████████, and that <u>TFCP was committed to</u> ██████████████████. *See* DeVoogd Decl. at ¶ 16 and **Ex. H** (Depo. Tr. of Paul Karger at 140:21-141:18).

So, what happened? CellInfo did not run out of money, contrary to what Mr. Drouin now claims in his self-serving declaration. More importantly, the third parties that had █████████ █████████████████████████████████████. What changed was that by the time the parties exchanged rebuttal expert reports on October 19, 2019, it was apparent and

inescapable that CellInfo could not prevail in the arbitration, and the hearing was only weeks away (scheduled for the first week of December 2019). Recognizing that reality, CellInfo's ████ ████ turned off the spigot and its litigation counsel withdrew just days later (on October 23, 2019). Only then did CellInfo cry poverty for the first time as a means of avoiding the day of reckoning.

How clear was it that CellInfo was going to lose? Crystal clear. CellInfo's main goal was to enjoin American Tower from deploying its Tower Analytics platform in order to leverage a settlement. Accordingly, once in arbitration CellInfo brought a request for preliminary measures asking the panel to extend the stipulated preliminary injunction that the parties had entered into after this Court's December 2018 ruling, and argued that irreparable harm should be presumed for purposes of the motion. American Tower opposed the request, and argued, among other things, that CellInfo was required to, but could not, demonstrate irreparable harm. The panel's Opinion and Order, in September of 2019, denied the request for preliminary measures and concluded that CellInfo <u>could not demonstrate irreparable harm</u>. *See* DeVoogd Decl. at ¶ 8 and **Ex. D** (Op. and Order (Sept. 10, 2019)). It noted that, even if a presumption of irreparable harm applied as CellInfo urged, it was, at best, a rebuttable presumption—which American Tower had successfully rebutted. *Id.* The panel concluded by saying that CellInfo's case would be limited to any monetary damages it could prove. *Id.*

Then, when CellInfo's expert disclosures were served and filed in October of 2019, those disclosures effectively admitted that CellInfo could not prove any monetary damages as a matter of law. ████████████████████, even if it had, American Tower never sold or offered to sell a competing product. In fact, the only system accused by CellInfo ████████████ ████████████████████. Moreover, as part of the parties' stipulated preliminary

injunction entered by the Court in 2018, American Tower agreed to leave the internal-only system dormant and not activate it. The system ███████████████████. DeVoogd Decl. at ¶ 22. Consequently, CellInfo knew after the exchange of expert disclosures, if not much earlier, that it had no legally viable claim for any monetary damages. While it was equally apparent that CellInfo could not prevail on the substance of its claims, this was beside the point: CellInfo knew it couldn't get an injunction or any monetary damages regardless of whether it proved its claims.

Once it was obvious that there would be no injunction, and that there would be no damages, things unraveled quickly. Just three business days after the parties exchanged rebuttal expert reports, King & Spalding withdrew as CellInfo's counsel without offering any explanation. After this, American Tower received word that CellInfo had not paid its required share of the remaining arbitration fees, and CellInfo moved to stay the proceedings while it secured new attorneys.

By the time CellInfo elected to stop paying its arbitration fees and sought to delay the arbitration hearing, its conduct during arbitration had already confirmed that this Court's December 2018 analysis and ruling were correct. The parties' agreed-to arbitration provision never denied CellInfo "access" to arbitration as would be necessary to invoke the effective vindication doctrine. *See Awuah*, 554 F.3d at 15 (arbitration regime must be "structured so as to prevent a litigant from having access to the arbitrator" in order to trigger effective vindication). To the contrary, CellInfo readily went to arbitration and, represented by a team of King & Spalding lawyers and local counsel from Todd & Weld, zealously litigated the case in arbitration through motion practice and extensive fact and expert discovery.

### C.   CellInfo's Continuing Misconduct Is Inexcusable and Justifies Rule 11 Sanctions

Mr. Drouin's latest declaration says that if he ████████████████████████ ████████████████████. This self-serving statement is exactly the kind of Potemkin village

that the Court derided in its 2018 opinion sending the parties to arbitration. Memorandum at 5, n. 2. More importantly, Mr. Drouin's professed remorse is irrelevant. His regret does not mean that, after spending well over ███████████ to aggressively litigate his claims, he gets to unilaterally walk away from arbitration when American Tower was prepared to present its case at hearing and bring an end to the matter, then go silent for months only to reappear and seek to reopen the case in district court based on an argument that failed before both the arbitration panel and this Court. The law that CellInfo cites certainly does not permit it.

It is hard to imagine what CellInfo hopes to gain from the effort, other than saving itself the arbitration fees it refused to pay, as the underlying realities will not change. In any event, the sole "effective vindication" argument CellInfo now makes to justify its request is objectively without merit. This lack of merit is apparent based on this Court's established law of the case, and in view of the well-established effective vindication jurisprudence that is in universal accord with this Court's 2018 ruling. CellInfo's motion is plainly frivolous, and devoid of any possible good faith basis. And it compounds unnecessarily the prejudice and cost that American Tower has already suffered from CellInfo's misconduct.

Timing is important here. The law is clear: a party may seek to excuse itself from an obligation to arbitrate only in the limited circumstance where its unequal bargaining position led to an arbitration provision that prospectively barred its access to arbitration as a forum. That demonstrably did not happen here. Yet, if CellInfo truly thought that it had any basis to make such an argument, it should have been made in response to American Tower's motion to compel arbitration back in 2018.

Instead, it was almost two years later, after arbitration had not gone as planned, that CellInfo first made its effective vindication argument to the arbitration panel in support of its

request to transfer the case back to district court. The panel rejected the argument and terminated the arbitration in April of 2020. CellInfo then did nothing for over two months. In late June, counsel informed American Tower that CellInfo intended to remake the exact same argument in the present motion. During multiple meet and confer discussions, American Tower's counsel informed CellInfo's counsel that the proposed motion lacked a good faith basis. *See* DeVoogd Decl. at ¶ 34. CellInfo filed the present Motion anyway. American Tower served CellInfo with its Motion for Sanctions on July 29, 2020, meaning the 21-day waiting period under Rule 11(c)(2) expires on August 19, 2020. *Id*. To date, CellInfo has declined to withdraw its Motion.

In briefing this issue before the arbitration panel, American Tower said that "enough is enough." That was abundantly true then. It is especially true now. American Tower, and its counsel, do not make a request for sanctions lightly—but it is warranted here if the Motion is not withdrawn. On top of the already prolonged and tortured history of this dispute, CellInfo and its attorneys now force a motion that they should know lacks any objective legal basis. American Tower should not have been forced to defend against this meritless argument, let alone to oppose it a second time.

Fed. R. Civ. P. 11 aims to "deter baseless filings in district court and thus . . . streamline the administration and procedure of the federal courts." *Cooter & Gell v. Hartmax Corp.*, 496 U.S. 384, 393 (1990). This rule "requires litigants to 'stop-and-think' before initially making legal or factual contentions." Fed. R. Civ. P. 11, Advisory Committee Note to the 1993 Amendments. Here, neither CellInfo, nor its counsel, identified or understood what this Court had already expressly decided in its December 2018 Memorandum, which was publicly accessible from the docket in this litigation. In any event, it is implausible that CellInfo's successor counsel could have reviewed and analyzed the well-established jurisprudence on the effective vindication doctrine and still have

maintained a good faith belief that the doctrine was available to CellInfo under the attendant circumstances. Sanctions are, therefore, justified if the Motion is not withdrawn. CellInfo has advanced a legal theory that is objectively not "warranted by existing law," and has needlessly imposed on American Tower additional and unjustifiable litigation costs.

Rule 11 permits a court to impose sanctions on a party or lawyer for advocating a frivolous position, and for needlessly increasing the cost of the litigation. *See* Fed. R. Civ. P. 11(b). If the court "determines that Rule 11(b) has been violated, [it] may impose an appropriate sanction on any attorney, law firm, or party that violated the rule or is responsible for the violation." Fed. R. Civ. P. 11(c)(1). Rule 11 also allows a court to impose monetary sanctions, including attorney's fees and other expenses resulting from the violation. *See* Fed. R. Civ. P. 11(c)(4); *Silva v. Witschen*, 19 F.3d 725 (1st Cir. 1994) (affirming award of attorney's fees under Rule 11). If CellInfo does not withdraw its Motion by August 19, 2020, such an award is justified here, which the Court should impose jointly and severally against CellInfo and its counsel to "deter baseless filings" such as CellInfo's Motion. *Cooter & Gell*, 496 U.S. at 393. The Court should impose a monetary sanction here if CellInfo continues to maintain its baseless position beyond August 19, 2020.

IV.    **CONCLUSION**

The American Tower Defendants respectfully request that the Court (1) deny Plaintiff's motion in its entirety, (2) dismiss the civil action with prejudice, and, if CellInfo does not withdraw its Motion by August 19, 2020, (3) award American Tower its fees and costs incurred in opposing this motion. To support such an award, American Tower further requests leave to quantify the costs and fees it was forced to incur in opposing CellInfo's frivolous Motion.

Dated: July 31, 2020

/s/ *James M. Wodarski*
James M. Wodarski (BBO # 627036)
Thomas H Wintner (BBO # 667329)
Andrew H. DeVoogd (BBO # 670203)
Daniel B. Weinger (BBO # 681770)
Geoffrey A. Friedman (BBO # 692771)
Harold Laidlaw (pro hac vice)
MINTZ, LEVIN, COHN, FERRIS,
GLOVSKY AND POPEO, P.C.
One Financial Center
Boston, MA 02111
Facsimile: (617) 542-2241
Telephone: (617) 542-6000
jwodarski@mintz.com
twintner@mintz.com
ahdevoogd@mintz.com
dbweinger@mintz.com
gfriedman@mintz.com
hslaidlaw@mintz.com

*Counsel to Defendants American Tower*
*Corporation, American Tower LLC,*
*American Tower Do Brasil – Cessao de*
*Infraestructuras LTDA, and ATC IP LLC*

## <u>CERTIFICATE OF SERVICE</u>

I certify that on July 31, 2020, I electronically filed the foregoing Defendants' Consolidated Memorandum in Opposition to Plaintiff's Motion to Reopen Case (Dkt. No. 68), and in Support of Defendants' Served Motion for Rule 11 Sanctions by using the CM/ECF system, which will send a Notice of Electronic Filing (NEF) to the registered participants identified and paper copies will be sent to those indicated as non-registered participants.

/s/ *James M. Wodarski*
James M. Wodarski