```
 1                 UNITED STATES DISTRICT COURT

 2                 DISTRICT OF MASSACHUSETTS (Boston)

 3                          No. 1:18-cv-11250-WGY

 4

 5     CELLINFO, LLC,
                 Plaintiff
 6

 7     vs.

 8

 9     AMERICAN TOWER CORPORATION, et al
                 Defendants
10

11                          * * * * * * * *

12

13

14                      For Zoom Hearing Before:
                        Judge William G. Young
15
                           Motion Session
16

17                      United States District Court
                        District of Massachusetts (Boston)
18                      One Courthouse Way
                        Boston, Massachusetts 02210
19                      Thursday, September 3, 2020

20

21                          * * * * * * *

22

23                 REPORTER: RICHARD H. ROMANOW, RPR
                        Official Court Reporter
24                 United States District Court
            One Courthouse Way, Room 5510, Boston, MA 02210
25                      bulldog@richromanow.com
```

```
 1                    A P P E A R A N C E S

 2

 3    KENNETH R. L. PARKER, ESQ.
          965 Walnut Street
 4        Newton, MA 02461
          (617) 275-3040
 5        Email: Ken@kennethparkerlaw.com
      and
 6    NATHANIEL J. LICHTIN, ESQ.
          Parker Keough, LLP
 7        51 Winchester Street, Suite 205
          Newton, MA 02461
 8        (857) 231-3192
          Email: Nlichtin@parkerkeough.com
 9    and
      ROBBIE J. REUTZEL, ESQ.
10        Wolf, Greenfield & Sacks, P.C.
          600 Atlantic Avenue
11        Boston, MA 02210
          (617) 646-8217
12        Email: Rreutzal@parkerkeough.com
          For Plaintiff
13

14    JAMES M. WODARSKI, ESQ.
      THOMAS H. WINTNER, ESQ.
15        Mintz, Levin, Cohn, Ferris, Glovsky and Popeo, P.C.
          One Financial Center, 42nd Floor
16        Boston, MA 02111
          (617) 348-1855
17        Email: Jwodarski@mintz.com
          For Defendants
18

19

20

21

22

23

24

25
```

```
1          P R O C E E D I N G S
2          (Begins, 2:00 p.m.)
3          THE CLERK:  Now hearing Civil Matter 18-11250,
4     CellInfo versus American Tower.
5          THE COURT:  Good afternoon, counsel.  This is a
6     hearing conducted pursuant to our zoom facility, such
7     hearings are authorized by statute, court regulation,
8     and our local rules.  The host for the zoom is Courtroom
9     Deputy Clerk, Jennifer Gaudet.  I have our Court
10    Reporter, Rich Romanow, on the line as well as law
11    clerks.  Because this is a court proceeding, it is open
12    to the press and public.  I have no idea whether any
13    members of the press or public are in attendance, but if
14    they are, I must remind them to keep your mics muted and
15    also that the rules of court remain in full force and
16    effect, and that is that there is no rebroadcast,
17    transmission, taping, streaming, of this hearing.
18         Now with those things taken care of, would counsel
19    who are going to argue introduce themselves, starting
20    with the plaintiff.
21         MR. PARKER:  Good afternoon, your Honor, my name
22    is Ken Parker, I represent the plaintiff, CellInfo
23    Incorporated -- CellInfo, and I am joined today by my
24    colleagues, Rob Reutzel and Nathaniel Lichtin.
25         THE COURT:  Good afternoon.
```

1          MR. WODARSKI:  Good afternoon, your Honor, this is

2    Jim Wodarski from Mintz Levin, representing all of the

3    American Tower defendants, and with me is Thomas Wintner

4    from Mintz Levin.

5          THE COURT:  Well good afternoon to you both.

6          Now it is the plaintiff that -- well let me set up

7    the procedural situation here.

8          The plaintiff has moved to lift the stay, restore

9    the case to the active trial list in this court.

10   Various defendants have opposed.  I have read your

11   briefs and read them and reflected on them with care.

12         I recognize that an order has entered reopening

13   the case, that's my fault, don't think this is a

14   reconsideration, that's simply an error.  Let us --

15   we'll vacate that order and we'll decide what to do in

16   this afternoon's hearing, because I think substantial

17   issues are raised here.

18         But the place I want to start, no more than 10

19   minutes a side, is with American Tower's position.  On

20   the -- what appears to be undisputed here, on these

21   facts, ought I not reopen the matter and proceed with a

22   trial on the merits?

23         MR. WODARSKI:  Thank you, your Honor, this is Jim

24   Wodarski.

25         And the answer to that is "No" for the simple

1   dispositive fact that CellInfo, by its own admission

2   since statements filed in this litigation, concedes that

3   it does not lack the funds to arbitrate, your Honor,

4   rather CellInfo, together with its investors, have

5   intentionally chosen simply not to arbitrate by refusing

6   to pay the arbitration fees.  And there's three points I

7   can concentrate on to demonstrate that for you, your

8   Honor.

9        First, it is an undisputed truth that CellInfo is

10  now and always has been cash-strapped and necessarily in

11  need to rely on investor funding for both its operations

12  before the litigation and for litigation costs after.

13  That was true at all times including today.

14       Second, your Honor, CellInfo's investors are not

15  the detached arm's-length litigation funders that

16  Mr. Drouin suggested in his declaration, they're an

17  intimate group of friends and family.

18       For example, your Honor, the Twin Focus Capital

19  partners, um, Paul and Leslie Karger, and

20  Mr. Pantekidis, all principals in that very

21  significantly-funded entity, um, have participated in

22  CellInfo's operations since 2015, including funding its

23  operations in large part from 2015 through August of

24  2018.  It's no surprise from that, your Honor, as you

25  may have noted from our papers, that the arbitration

1    panel, in its March 2020 order, referred to these Twin

2    Focus partners as "the real parties in interest."

3            It's difficult to understate their integral role

4    in the daily affairs of CellInfo's business, including

5    most particularly Paul Karger, um, who acted as the

6    defacto CFO and of course the business opportunity with

7    American Tower that underlies this dispute was brought

8    to CellInfo by Mr. Karger leveraging a relationship he

9    had with a senior American Tower executive.

10           And then once we are in litigation, your Honor,

11   the investor community expanded to a few individuals

12   introduced by the Twin Focus partners and to

13   Mr. Drouin's mother and father.  So the investors here,

14   your Honor, have a strong attachment and commitment to

15   CellInfo and they go far beyond mere outside investors.

16           But here's the third and most important point.

17   CellInfo admits that while the company itself has no

18   money to fund this litigation or pay the arbitration

19   costs, its investors are still willing to fund the costs

20   of litigation if and only if CellInfo's claims are tried

21   here in the District Court.  And that's the critical

22   point, your Honor.

23           CellInfo does not dispute that its funders have

24   sufficient resources to fund the arbitration, including

25   the fees, it does not dispute that they're willing to

 1    continue funding the litigation costs, it's simply that

 2    they are unwilling and refuse to pay the remaining

 3    arbitration fees.  And that is a choice, your Honor, not

 4    a lack of funds.

 5         And to punish --

 6         THE COURT:  I interrupt because -- you're making a

 7    very cogent argument that appears in accord with the

 8    law, but, um, I'm going to expect that they dispute

 9    certain of these things.  Now at the minimum, don't I

10    have to hold a hearing and decide that matter myself?

11         You see you're talking -- I'm like concerned, I

12    mean what are we talking about here, is this like

13    summary judgment or what?  I agree with you that at most

14    in favor of CellInfo it's a two-step process, I have to

15    hold a hearing, satisfy myself that there was good

16    faith, that they were genuinely unable -- not just as a

17    matter of choice, but unable to pay, and if I made those

18    findings, then perhaps I could go ahead and resolve the

19    case on the merits.  But on the first point, which

20    you're arguing, and as I say arguing cogently, don't I

21    have to hold a hearing on that?

22         MR. WODARSKI:  Well the simple answer is "No,"

23    your Honor, and I agree with you that you have to

24    satisfy yourself and make those findings.  But if you'll

25    allow me, I think all you'll need to do in this

1    circumstance is look at, um, two sources of sworn

2    statements offered in this litigation by CellInfo's CEO,

3    Mr. Drouin, and its key investor and senior advisor,

4    Mr. Paul Karger.  And so if I could just quickly

5    summarize those two for you, your Honor, I think you'll

6    understand my point.

7        First, as you know Mr. Karger, in his deposition

8    transcript, that supports I'm about to tell you, is

9    filed with the declaration of Andrew DeVoogd, um,

10   Exhibit H, your Honor, he sat for his deposition in

11   September of 2019, and he said that, um, under oath,

12   that he and the other Twin Focus partners had funded

13   CellInfo's operations from 2015 to 2018, as I noted, and

14   then as of August of 2018 pivoted to litigation funding,

15   and most importantly, your Honor, he said that as he sat

16   there in that chair, as of September 2019, he and the

17   investors were committed to continuing funding the

18   arbitration.

19       And then if you look at Mr. Drouin's declaration

20   dated July 2nd of this year, your Honor, which the

21   plaintiffs have filed in support of their present

22   motion, I could just walk you through that very quickly.

23   In Paragraph 8, Mr. Drouin states that the company

24   itself has had no revenue since at least August of 2019

25   and that all funds are coming from investors.  In

Paragraph 9, he states that in early September of 2019,

CellInfo agreed, with its law firm, King & Spaulding,

that its investors would provide $300,000 to cover the

arbitration fees including the outstanding arbitration

administrative costs.

So we know -- just to pause there for a moment.

We know that as of September of 2019, the investors were

committed to funning the arbitration and specifically to

providing $300,000 to cover costs including these

outstanding arbitration fees.

So we move on to Paragraph 13 and see an October

-- a reference to an October 1st e-mail, where King &

Spaulding lawyer, Jim Brogan, demands of his clients an

additional $100,000 for arbitration fees because the

invoice exceeded budgeted estimates by that amount.  And

so in Paragraph 14 now, in October of 2019, Mr. Drouin

states that he reached back out to his investor

community -- and again this is his close business

associates and his own parents, to get an additional

$100,000 and says "No one was willing."

So again here let's pause for a minute, your

Honor.  So apparently without any explanation, certainly

Mr. Drouin in his declaration provides you with none, he

would have us believe that his own mother and father and

his longstanding close CellInfo business partners, after

1    already funding what from our level of visibility seems

2    to be close to at least $2 million in litigation,

3    attorneys fees, and costs, refused to fund an additional

4    $100,000 to meet the arbitration invoice that was

5    outstanding.

6         And you have to ask yourself again, your Honor,

7    and this is an important point, why were the investors

8    fully committed to funding the arbitration in September

9    of 2017, but one month later, in October of 2019, not

10   willing?  And then the affidavit, in three other

11   paragraphs, your Honor, gets very interesting in

12   answering your point.

13        Paragraphs 17 and 18, Mr. Drouin goes on to say,

14   notwithstanding that no one was willing to pay the

15   arbitration fees, he nonetheless, from October of 2019

16   to March of 2020, was able to get an additional $50,000

17   in litigation funding from his investors, while he

18   admits in Paragraph 20 that the company itself was still

19   unable to independently fund the litigation.

20        And then we get to the most important paragraph,

21   your Honor, Paragraph 26.  Mr. Drouin acknowledges at

22   the outset of that paragraph that CellInfo has had to

23   pay arbitration costs, attorney fees, expert witness

24   fees, deposition costs, and then concedes that except

25   for the arbitration fees, CellInfo understands that it

1    will have to pay all of these other litigation costs

2    going forward if the case is litigated in District

3    Court.  And we know, your Honor, from what he's

4    previously said in this very declaration that obviously

5    under CellInfo financial circumstances it has to use

6    those investor funds to pay those District Court costs.

7         THE COURT:  I have the point.  I think you've made

8    the point.  Let's hear from Mr. Parker.

9         Mr. Parker?

10        MR. PARKER:  Thank you, your Honor.

11        We had at one point, um, an assented-to motion to

12   file a reply brief which rebuts most of these, um,

13   statements which are almost entirely inaccurate.  That

14   was not granted by the Court.  I assumed because the

15   Court has granted our underlying motion, but I would ask

16   for the opportunity to file that if the Court is still

17   considering this on its merits.  If I might have a --

18        THE COURT:  I am and you may.

19        MR. PARKER:  Thank you, your Honor.

20        Just to start with that last point first and then

21   try to run through the litany of, um, of not quite

22   accurate and totally inaccurate statements that were

23   just made, the first of which is it wasn't $2 million

24   that CellInfo has spent over the entire course of the

25   years of this litigation.  Including arbitration fees,

1    including, um -- including expert witness costs and

2    attorney fees, CellInfo expended a total, a grand total

3    of $730,000, and that includes, um, $240,000 in

4    arbitration fees including the 180 that it handed over

5    to King & Spaulding for the purpose of paying this

6    invoice, this $209,000 -- it didn't even have the

7    invoice yet, for paying the anticipated $300,000.  So,

8    yes, they have the ability to raise another 120 to

9    complete the litigation.

10        The other, um, fact that isn't at issue is they're

11   not hiring King & Spaulding, they're hiring little-old

12   partner PK LLP, with just four lawyers, and we're very

13   inexpensive.  We represent the little guy.  And that's

14   exactly what we're doing here, is we're doing this case

15   for what others might consider a pittance.  That's all

16   they could afford.  If they could afford more, I'm sure

17   they would have hired one of the big downtown firms,

18   Foley Hoag or somebody else, or stuck with King &

19   Spaulding.  I don't think they would have stuck with

20   King & Spaulding because King & Spaulding took their

21   $180,000 that was supposed to be used for arbitration

22   fees and used it for other purposes, as we agreed to,

23   your Honor.  But they could have used another big firm

24   had they had funds.

25        There are a number of -- and I'm just going to

1    glance at my notes here, a number of other things that

2    are just total mischaracterizations.

3         THE COURT:  Wait a minute.  Let's -- help me out

4    with the procedure or rather the rules of engagement.

5         MR. PARKER:  Yes, your Honor.

6         THE COURT:  And I tried that with the other side

7    and they gave me helpful responses.

8         MR. PARKER:  Thank you, your Honor.

9         THE COURT:  You agree that I first must determine

10   CellInfo's good faith and its inability to pay, that's

11   what the law requires.  If -- you can't just decide not

12   to pay or CellInfo cannot decide not to pay if they have

13   the wherewithal to pay.

14        So he's arguing, which is responsive to that

15   framework, um -- and I hear you differ with it and I'm

16   not surprised, I've read the papers, you say, "Well that

17   really isn't the situation."  Well now how do you think

18   I ought proceed?

19        MR. PARKER:  Your Honor, there is ample evidence

20   in the Drouin declaration that there was no ability to

21   pay these arbitration fees, and if you let me walk

22   through that in a minute I will detail that.  And you

23   could certainly, and I think should reopen the case and

24   set a date for hearing based on that because it's

25   uncontroverted evidence, they only have evidence about a

 1    past ability, but no evidence about a present ability to

 2    pay that $209,500, or more particularly to pay it in the

 3    time frame required by the tribunal.  They had

 4    absolutely no ability to raise that that much money that

 5    fast.  And I think you have evidence to that effect, you

 6    have no evidence on the other side of that, and so you

 7    could decide that on the papers.

 8         However, your Honor, if you deemed it appropriate

 9    to have an evidentiary hearing and assess the

10    credibility of the witnesses and get further financial

11    documents, we would not argue with that, we think that

12    that's -- that would be reasonable on your part if you

13    did not feel you had enough evidence.  But I will say,

14    however, that the evidence is uncontroverted that they

15    had $12,000 in change -- or at the relevant time they

16    had $12,000 in change in their bank account, and that

17    $100,000 that they referred to -- the $50,000 they

18    referred to was part of the 180 that they already --

19    that we had already discussed, that was the 180 towards

20    the 300 that they've raised.  They had 130, then another

21    50, and they knew they would have to scrape together,

22    before the end of the case, your Honor, another 120,

23    which was stretching their resources to the limit.  That

24    is not -- that is uncontroverted, that they were unable

25    to raise more than that.

1          And the fact that there were optimistic statements
2    made years ago about ability to raise funds, um, is I
3    think -- is disingenuous on the part of ATC.  Because
4    they refer to Twin Focus as being a multibillion dollar
5    fund, but the actual people here don't have this kind of
6    money.  Paul Karger doesn't have this kind of money.
7    Nor are these third-parties under any legal obligation
8    to give more money, to loan it, to invest it, to donate
9    it, or otherwise give it to CellInfo.  The only legal
10   question, your Honor, is whether CellInfo has the money.
11   And just because someone was doing some work for
12   CellInfo does not make them part of that legal entity.
13          We have a doctrine in our country that a
14   corporation is a person.  Love it or hate it, it is
15   true, CellInfo is a person.  Paul Karger is a different
16   person.  And Twin Focus and these other people, and even
17   Nate Drouin's parents, they are all different people,
18   and they are not legally or contractually bound to give
19   CellInfo one red cent.
20          THE COURT:  All right, I think I understand the
21   argument.
22          Here's what we're going to do.  You've got that
23   reply memorandum ready to go.  You file it.  I'm going
24   to take the matter under advisement.  If I decide to
25   hold an evidentiary hearing, limited to the issue of

1    ability to pay, it will be scheduled and I will use this

2    opportunity to inquire of the Clerk when -- let's say 2,

3    3 weeks from now, that might be scheduled.  So I will

4    inquire of the Clerk to suggest a date.

5          MR. PARKER:  Your Honor, may I ask one more

6    question about the papers?

7          THE COURT:  You may once I've gotten the answer

8    from Ms. Gaudet.

9          THE CLERK:  Thursday, September 17th.  We can do

10   the morning or the afternoon, Judge.

11         THE COURT:  For now, because we're going to have

12   to confirm this once I've read the papers just to be

13   filed, for now we'll tentatively set it for the morning

14   of Thursday, the 17th of September, at 9:00 a.m., an

15   evidentiary hearing limited to the first issue, the

16   ability to pay.

17         Yes, Mr. Parker, questions?

18         MR. PARKER:  Yes.  We filed only a partial

19   redacted version of our memo because it does reference

20   and some of its exhibits reference items that were filed

21   under seal, including financial information about

22   CellInfo.  The Court did not grant our motion, but said

23   it might reconsider.  Without the ability of course to

24   file a redacted version -- an unredacted version under

25   seal, we can't get your Honor all the information you

1  need to consider this.

2      THE COURT:  I will allow you to file, under seal,

3  the actual financial data, that is books and records,

4  not affidavits about books and records.  Those are

5  secondary sources.  That's advocacy.  But if you have

6  actual data of an evidentiary nature, that may be filed

7  under seal.

8      Does that answer your question?

9      MR. PARKER:  Thank you, your Honor.  We'll attach

10  those to a declaration to our reply then.  It will take

11  us a day or so to get that together.

12      THE COURT:  And that's fine.

13      Let me ask you this.  If we get over this hurdle,

14  and here I'm just bemused, I guess.  I'm just wondering,

15  if you got over this first hurdle, um -- you're not

16  seeking a jury here, in fact the arbitration clause

17  operates, it seems to me, as a waiver of any jury right

18  even if I were to restore you to the trial list.

19      You agree to that?

20      MR. PARKER:  No, your Honor.

21      THE COURT:  You don't?

22      MR. PARKER:  No, your Honor, I don't think that

23  that's correct.  I think the arbitration clause, um, is

24  a -- arbitration does not terminate the Seventh

25  Amendment right to a jury trial.  If you read, um --

1        THE COURT:  I didn't -- I didn't -- no, it doesn't

2    terminate it, but in these circumstances it would seem,

3    and I continue to think I was correct, that this is a

4    matter that should go to arbitration.

5        Now if the clause is frustrated in good faith and,

6    um, fails in its intended purpose, but in good faith, it

7    would seem that, um, perhaps you ought be able to get to

8    the merits.  But I don't think you can -- you may want

9    to brief it as to those cases that have gotten past the

10   first hurdle.  I'm not past the first hurdle at all.

11   But if we're past the first hurdle, it would seem to me

12   that, um, you don't have a jury, and second it would

13   seem to me it's akin to an arbitration.  So there's no

14   discovery as of right, so I would imagine you would be

15   ready for trial and we could get to trial fairly

16   rapidly.  But that puts the cart before the horse

17   because I'm not at all sure that I will or can or should

18   allow this case to be restored to the docket of this

19   court.

20       So I've said enough.  You understand my concerns.

21       MR. WODARSKI:  Your Honor, this is Mr. Wodarski.

22   May I have a few questions?

23       THE COURT:  Yes.

24       MR. WODARSKI:  Yes.  Thank you.

25       So, your Honor, I understand your desire to have

1    an evidentiary hearing to get the fullest possible

2    record, but, um, from our perspective though it creates

3    potentially a logistical problem of, um, really to

4    compile that record you would need to hear from third-

5    parties, um, including the two Carvers, Mr. Pantekidis,

6    and I would say Mr. Brogan from King & Spaulding, but

7    certainly the three Twin Focus partners.  And I think

8    within that time frame, realizing they're not parties to

9    the lawsuit, it might make it difficult to secure them

10   absent an agreement.

11        THE COURT:  Well, one, I would expect an agreement

12   if they're so closely affiliated with the plaintiffs, as

13   you say, that wouldn't be a problem, save perhaps for

14   the King & Spaulding people.  No, no, I'm not looking

15   for delay here, and if they are necessary witnesses and

16   CellInfo can't produce them, one would imagine I would

17   hold it against CellInfo.

18        Other questions?

19        MR. PARKER:  Just in answer to a question, your

20   Honor.

21        THE COURT:  Yes.

22        MR. PARKER:  Yes, your Honor.  There is -- we of

23   course, in accordance with ordinary pretrial procedures,

24   we'd like the updated responses to interrogatories and

25   document requests, there are two interrogatories and

1    three document requests.

2         THE COURT:  Look.  Look.  You know again you're

3    facing a very large hurdle here.  I mention these

4    downstream issues only because they interest me as an

5    academic matter, and as an academic matter I will

6    express myself in saying, um, that if you got over the

7    first hurdle, if you did, then I don't see where you get

8    the rights to have, um, discovery that would not be

9    available in an arbitration.  I just don't understand

10   that.  But you could brief it if we get that far.  It

11   seems to me like we've got a jury-waived proceeding and,

12   um, certainly no further discovery.  I'm not going to

13   shut my eyes to probative evidence, if we got that far.

14   But I'm not nearly there.

15        This is the first time I've confronted this issue.

16   It's an interesting issue.  There's no law on it in this

17   circuit, but there is law -- no controlling law, but

18   there is law in other circuits.  I think this *Tillman*

19   case out of the Ninth Circuit is especially -- um,

20   especially persuasive, and it gives you some idea of

21   what you have to do.

22        Mr. Wodarski's correct, I favor evidentiary

23   hearings rather than simple arguments and

24   representations, especially where there are disputes.

25   At the same time, um, in fairness I have to go back over

 1  these materials and see if things in fact are not
 2  disputed, and if not disputed and that leads me to a
 3  result, I can enter an order.  So that's what I'm going
 4  to do first.  If that indicates an evidentiary hearing,
 5  we'll let you know right away.  If it's an evidentiary
 6  hearing, it will take place on the 17th and I expect the
 7  parties to be ready.
 8          Any other questions?
 9          MR. WODARSKI:  Yes, your Honor, just one thing
10  that your comments sparked to me.
11          Based upon the present posture of the motions to
12  seal, as I said, your Honor, our case, we believe we can
13  demonstrate undisputed facts that dispose of this issue
14  from Mr. Karger's deposition testimony and from
15  Mr. Drouin's July 2nd declaration.  I just want to make
16  sure that the Court has both of those before it as it
17  prepares for the arbitration -- or the evidentiary
18  hearing.  So would it be possible, your Honor, to have
19  leave to just file those with a letter making sure you
20  have both?
21          THE COURT:  In fact that would be helpful.
22          MR. WODARSKI:  Thank you, your Honor.
23          THE COURT:  It's a very good question.
24          Anything else?
25          MR. WODARSKI:  Nothing from American Tower, your

1   Honor.

2          THE COURT:  And, Mr. Parker, anything else?

3          MR. PARKER:  Nothing at this time, your Honor.

4   Thank you very much.

5          THE COURT:  I thank you both very much.  A very

6   interesting issue.

7          All right.  Under the terms I've outlined, I'll

8   take it under advisement and we'll stand in recess.

9          (Ends, 2:30 p.m.)

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

```
 1                    C E R T I F I C A T E

 2

 3

 4

 5          I, RICHARD H. ROMANOW, OFFICIAL COURT REPORTER,

 6     do hereby certify that the foregoing record is a true

 7     and accurate transcription of my stenographic notes

 8     before Judge William G. Young, on Thursday, September 3,

 9     2020, to the best of my skill and ability.

10

11

12

13

14     /s/ Richard H. Romanow 09-16-20
       _____
15     RICHARD H. ROMANOW    Date

16

17

18

19

20

21

22

23

24

25
```