**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| CELLINFO, LLC<br><br>Plaintiff,<br><br>v.<br><br>AMERICAN TOWER CORPORATION, AMERICAN TOWER LLC, AMERICAN TOWER DO BRASIL – CESSAO DE INFRAESTRUTURAS LTDA, and ATC IP LLC.,<br><br>Defendants. | Civil Action No. 18-11250-WGY |

**CELLINFO, LLC'S MOTION REQUESTING WRITTEN MEMORANDUM OF DECISION ON MOTION TO REOPEN CASE AND SET TRIAL DATE**

Plaintiff CellInfo, LLC ("**CI**"), by and through its counsel of record, respectfully requests that the Court issue a written memorandum of decision stating the factual and legal basis for its decision denying CI's motion to reopen the case and to set a date for trial [Dkt. No. 112] (the "**Decision**"). The Court rendered the Decision orally on the record during a hearing on September 29, 2019. The Court stated on the record that it was not offering a factual basis for its Decision, but rather that it was "speak[ing] only in conclusory terms[.]" Evidentiary Hr'g Tr. 31:19–20, Sept. 29, 2020. The Court stated that it reserved its right "to write an opinion with additional subsidiary facts," but to date the Court has not done so. Evidentiary Hr'g Tr. 31:18–19, Sept. 29, 2020. As discussed below, CI respectfully requests a written memorandum of decision stating the factual and legal basis for the Court's Decision, which for all practical purposes amounted to a dismissal of CI's complaint.[1]

---

[1] While the Decision appears on its face to keep the door open a crack for CI to make a new motion seeking a trial on its claims, the Decision limits the circumstances under which the Court

Specifically, CI asks the Court to enter findings of fact on the following issues:

1) Whether CI had sufficient funds in its bank accounts to pay the September 5, 2019 AAA invoice for $207,900 in AAA arbitration fees (the "**AAA Invoice**") at the time it received the AAA invoice or at any time between its receipt of the AAA Invoice and when payment on the AAA Invoice was due;

2) Whether CI had sufficient liquid assets other than the funds in its bank account that it could have used to pay the AAA Invoice before it was due;

3) Whether CI had sufficient revenue to pay the AAA Invoice by the time it was due;

4) Whether CI made genuine good faith efforts to raise the funds necessary to pay the AAA Invoice from its investors and lenders;

5) Whether there were other people or entities with whom CI had relationships that would have provided CI with sufficient funds to pay the AAA invoice had CI asked or that CI failed to ask; and

6) Whether there are any other facts that support the Court's conclusion that CI was not unable "to proceed with the arbitration."

CI further requests that said memorandum of decision state the legal standards that it applied, including:

1) What legal standards it used in determining that CI had not met its burden of proving that it was "unable to proceed with the litigation," including whether the Court applied the standard set forth in *Awuah*,[2] the standard from *Tillman*,[3] or some other legal standard;

2) Which party bore the burden of proof in denying CI a jury trial on the merits of its claims;

3) What legal standard it used in determining whether to reopen a case that had been

---

would consider such a trial to two non-viable scenarios: (1) "pending further proceedings before the arbitrable forum" or (2) "working out of the dispute between CellInfo and King & Spaulding[.]" Evidentiary Hr'g Tr. 33:17–18, Sept. 29, 2020. First, there can be no further proceedings before the arbitral forum, since the matter has been closed. *See* Final Order, Dkt. No. 70-1, p. 85 (terminating proceedings). Second, King & Spalding has refused to use so much as $50,000 of the $180,000 it was holding in trust toward the payment of the AAA Invoice and refused to return to CI the disputed funds. Parker Declaration, ¶ 3; Hearing Exhibit 18.

[2] *Awuah v. Coverall N. Am., Inc.*, 554 F.3d 7, 15 (1st Cir. 2009).

[3] *Tillman v. Tillman*, 825 F.3d 1069 (9th Cir. 2016).

administratively closed; and

4)      Which party bore the burden of proof in determining whether to reopen a case that
         had been administratively closed?

In support of this Motion, CI states as follows:

1.   On November 20, 2018, the Court administratively closed the case for purposes of allow-

ing the case to be arbitrated on the merits before the AAA [Dkt. No. 66];

2.   On September 5, 2019, the AAA invoiced CI $207,900 in arbitration fees.

3.   In two payments on September 10, 2019 and September 23, 2019, CI provided King and

Spalding ("**K&S**") with a total of $180,000 that was to be used to pay litigation costs, starting

with arbitration fees, pursuant to an agreement between CI and K&S under which CI would front

$300,000 for costs and under which K&S would defer all other costs and fees.

4.   On October 10, 2019, CI's then-attorney at K&S emailed CI informing CI that K&S had

used funds provided to it by CI to pay arbitration fees for other purposes and that CI would have

to pay the entire $207,900 itself.

5.   On October 4, 2019, CI asked K&S if it would be willing to use $50,000 of the $180,000

it had paid into K&S' IOLTA account to pay a portion of the arbitration fees. Hearing Exhibit

18.[4]

6.   On October 4, 2019, K&S refused CI's request to use $50,000 of these funds to pay arbi-

tration fees. Hearing Exhibit 18.

7.   Without access to the funds withheld by K&S, CI lacked the ability to pay the required

arbitration fees.

---

[4] CI, through counsel, subsequently attempted to recover the disputed $180,000 from K&S with-
out success. *See* Declaration of Kenneth Parker, attached hereto as **Exhibit 1**.

8.   CI made genuine good faith efforts to raise the funds required to pay the required arbitration fees, but was unable to do so.

9.   On March 4, 2020, the AAA offered ATC the opportunity to pay the AAA Invoice if it wanted to continue the arbitration, but ATC declined to do so.

10. On July 2, 2020, CI moved the Court to reopen the case and set a date for trial on the grounds that its inability to pay required arbitration fees did not abrogate its right to have its claims resolved on the merits and other grounds, as set forth in its motion and memorandum in support thereof [Dkt. Nos. 68 and 70] (collectively, the "**Motion for Trial**").

11. On September 3, 2020, the Court held a hearing on CI's Motion for Trial, at which the Court stated that it would take the matter under advisement and that it might schedule an evidentiary hearing "limited to limited to the issue of ability to pay." Mot. Session Tr. 15:25–16:1, Sept. 3, 2020.

12. On September 3, 2020, the Court scheduled an evidentiary hearing on this issue for September 17, 2020.  [Dkt No. 93].

13. On September 17, 24, and 29, the Court held the evidentiary hearing on CI's ability to pay the AAA Invoice.

14. During the final day of the hearing on September 29, 2020, the Court ruled from the bench that CI had not met its burden of proving that it was unable "to proceed with the arbitration." Evidentiary Hr'g Tr. 31:24–32:2, Sept. 29, 2020.

15. The Court's Decision denying CI a trial on its claims constitutes an appealable final order, since it precludes consideration of CI's claims on their merits and leaves nothing for the Court to do. *Alstom Caribe, Inc. v. Geo. P. Reintjes Co.*, 484 F.3d 106, 111 (1st Cir. 2007) (citing *Catlin v. United States*, 324 U.S. 229, 233 (1945)) (internal citations omitted) (holding that

appellate jurisdiction under 28 U.S.C. § 1291 is limited in most instances to "final decisions," which are orders that end consideration of the merits of claims and leave nothing for the trial court to do other than execute a judgment). Here, CI has no access to a trial of its claims on their merits, as the only two scenarios in which the Decision contemplates reopening the case are not viable. Specifically, (1) the AAA arbitral tribunal closed the matter, so there is no further possibility of its being arbitrated, Final Order, Dkt. No. 70-1, p. 85, and (2) K&S has definitively rejected CI's attempts to "work[] out the dispute between CellInfo and King & Spalding. Parker Declaration, ¶ 3; Hearing Exhibit 18.

16. In rendering its Decision, the Court did not make any findings of fact, stating rather that its judgment was "conclusory" and that it reserved the right to make written findings separately. Evidentiary Hr'g Tr. 31:19–20, Sept. 29, 2020.

17. To date, the Court has made no such written findings.

18. Similarly, the Court's Decision does not include any rulings of law or state the legal standard applied.

19. The Court stated in its Decision that it did not want to "in any way obviat[e]" CI's right to appeal. Evidentiary Hr'g Tr. 34:13–14, Sept. 29, 2020.

20. However, for the First Circuit Court of Appeals to determine whether the Court applied the correct legal standard and whether its findings of fact are supported by evidence in the record, it is necessary for there to be a memorandum of decision setting forth those legal standards and findings of fact. While the Court is not obligated to "make specific findings of fact or to elaborate upon its view of the controlling legal principles…if our multi-tiered adjudicative system is to function smoothly, **a trial court must provide an adequate record for appellate review**." *Grossman v. Berman*, 241 F.3d 65, 68 (internal citations omitted) (emphasis added). Thus,

the First Circuit has "repeatedly…emphasized the value of statements explaining the legal basis for a nisi prius court's decision, whether or not required by some rule." *Id.* (citing *Roque-Rodriguez v. Lema Moya*, 926 F.2d 103, 105 n.3 (1st Cir. 1991)). Here, in light of the Court's indication that it does not want to stand in the way of an appeal of its decision and the absence of any findings of fact or conclusions of law on the current record, a memorandum of decision is appropriate and would assist the First Circuit Court of Appeals in engaging in meaningful appellate review. Without such a memorandum of decision, CI's right to appeal the Decision could be rendered illusory.

WHEREFORE, in order to preserve CI's right to appeal a Decision that for all practical purposes dismisses its case and denies it a jury trial, CI respectfully requests that the Court issue a memorandum of decision setting forth the legal and factual basis for its Decision. Specifically, CI asks the Court to enter findings of fact on the following issues:

1)      Whether CI had sufficient funds in its bank accounts to pay the September 5, 2019 AAA invoice for $207,900 in AAA arbitration fees (the "**AAA Invoice**") at the time it received the AAA invoice or at any time between its receipt of the AAA Invoice and when payment on the AAA Invoice was due;

2)      Whether CI had sufficient liquid assets other than the funds in its bank account that it could have used to pay the AAA Invoice before it was due;

3)      Whether CI had sufficient revenue to pay the AAA Invoice by the time it was due;

4)      Whether CI made genuine good faith efforts to raise the funds necessary to pay the AAA Invoice from its investors and lenders;

5)      Whether there were other people or entities with whom CI had relationships that would have provided CI with sufficient funds to pay the AAA invoice had CI asked or that CI failed to ask; and

6)      Whether there are any other facts that support the Court's conclusion that CI was not unable "to proceed with the arbitration."

CI further requests that said memorandum of decision state the legal standards that it

applied, including:

1) What legal standards it used in determining that CI had not met its burden of proving that it was "unable to proceed with the litigation," including whether the Court applied the standard set forth in *Awuah*, the standard from *Tillman*, or some other legal standard;

2) Which party bore the burden of proof in denying CI a jury trial on the merits of its claims;

3) What legal standard it used in determining whether to reopen a case that had been administratively closed; and

4) Which party bore the burden of proof in determining whether to reopen a case that had been administratively closed?

DATED: October 27, 2020

CellInfo, LLC
By Its Attorneys,

/s/ Kenneth R. L. Parker
Kenneth R. L. Parker (BBO #688987)
Shaun P. Keough (BBO # 688868)
PARKER KEOUGH LLP
*Street Address:*
  51 Winchester St., Suite 205
  Newton, MA 02461
*Mailing Address:*
  P.O. Box 590006
  Newton, MA 02459
Tel.: (617) 841-2418
Fax.: (617) 963-8315
E-mail: kparker@parkerkeough.com

## **GOOD FAITH CONFERRAL**

Pursuant to L.R. 7.1(a)(3), I certify that I conferred on October 27, 2020 in good faith with

counsel for Defendants prior to filing this motion. Counsel for the Defendants stated that the De-

fendants take no position on this motion.

/s/ Kenneth R. L. Parker
Kenneth R. L. Parker (BBO #688987)

## **CERTIFICATE OF SERVICE**

I hereby certify that this document filed through the CM/ECF system will be sent elec-
tronically to the registered participants as identified on the NEF and paper copies will be sent
to those indicated as non-registered participants on this October 27, 2020.

/s/ Kenneth R. L. Parker
Kenneth R. L. Parker